Adam YARMOLINSKY, Appellant,

v.

PERPETUAL AMERICAN FEDERAL
SAVINGS AND LOAN ASSOCIA-
TION, Appellee.

No. 81–999.

District of Columbia Court of Appeals.

Argued April 27, 1982.

Decided Oct. 7, 1982.

Frederic Townsend, Washington, D. C.,
with whom Alan B. Morrison, Washington,
D. C., was on the briefs, for appellant.

Louis J. Ebert, Washington, D. C., with
whom James L. Hudson, Washington, D. C.,
was on the brief, for appellee.

Before KELLY, KERN and BELSON, Associate Judges.

KELLY, Associate Judge:

The undisputed facts on this appeal are that appellant Yarmolinsky contracted to sell his condominium at 2828 Wisconsin Avenue, N.W., Washington, D.C., to Sarah Short Austin. Ms. Austin arranged for a purchase loan from American Federal Savings and Loan Association (American), a predecessor in interest to appellee Perpetual American Federal Savings and Loan Association (PAF). Settlement on the sale was held on June 28, 1979, at the offices of District-Realty Title Insurance Corporation (District Title). Appellant received the purchase price of the sale from District Title on July 10, 1979, twelve days after settlement.

Appellant sued individually for damages caused by American's delay in disbursing the loan proceeds and also included in his complaint a class action claim on behalf of others similarly situated. In a subsequent motion for class certification appellant alleged that PAF and its predecessors in interest, American and Perpetual Federal Savings and Loan Association (Perpetual Federal),[1] engaged in a practice of loaning money to buyers of real property without disbursing the loan proceeds until days or weeks after settlement, all the while charging the buyer interest on the loan amount from the date of settlement. He asserted, in effect, that PAF charged and collected interest on loans which had yet to be made.

In the complaint, appellant defined the members of the class as:

(a) persons who sold real estate to a buyer who obtained financing for the purchase of that property through a mortgage contract with defendant Perpetual-American [Federal] Savings and Loan or with either of defendant's predecessors in interest, American Federal Savings and Loan Association and Perpetual Federal Savings and Loan Association;

(b) the settlement date for the sale of that real estate was within three years of the date of filing of this complaint; and

(c) as a result of the failure of defendant or either of its predecessors to fulfill their obligations under the mortgage contract, the person did not receive the full contract price on the settlement date, but only received such money after the settlement date.

Appellant theorized that the class members are third party beneficiaries of the mortgage agreements between PAF or its predecessors and the buyers of the class members' real estate. He asserted that PAF or its predecessors breached their duty to class members under the terms of the loan agreements by failing to have the mortgage loan proceeds available for the use of the class members at settlement. Appellant claimed injury to class members from the loss of the use of interest at the prevailing market rate on the full contract price from the date of settlement until the date the full contract price was made available to the class members.

Before discussing class certification, we take note of appellant's assertion that the court erred in failing, *sua sponte,* to certify a "core" subclass within the perimeters of the class as defined in the complaint. This core class would consist of owners of residential real estate in the District of Columbia who sold their property to buyers who borrowed money to finance the purchase from PAF or American.[2] Certifying such a class would have eliminated problems stemming from the potentially nonobjectionable practices of Perpetual Federal, from the

---

1. PAF was formed by the merger of Perpetual Federal and American on October 31, 1980.

2. Arguably, appellant fulfilled his obligation to submit proposals to the trial court for the construction of subclasses. *See United States Parole Commission v. Geraghty,* 445 U.S. 388, 408, 100 S.Ct. 1202, 1214, 63 L.Ed.2d 479 (1980). He defined realty as residential real estate in answer to an interrogatory, and he noted in a pleading that he would consider excluding from the class those sellers who sold to buyers who obtained loans from Perpetual Federal and those who sold real estate in Maryland or Virginia.

differences between residential and commercial mortgage loans, and from any relevant variations among the laws of Maryland, Virginia and the District of Columbia.

## I

Super.Ct.Civ.R. 23(a) and (b)(3)[3] say that a class action may be maintained if the class is so numerous that joinder of all its members is impracticable; if there are questions of law or fact common to the class; if the claims or defenses of the representative parties are typical of the claims or defenses of the class; if the representative parties will fairly and adequately protect the interests of the class, and if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Super.Ct.Civ.R. 23(a), and (b)(3). Matters pertinent to the court's findings include: the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the chosen forum; and

the difficulties likely to be encountered in the management of a class action. Super. Ct.Civ.R. 23(b)(3).

The plaintiff has the burden of showing that his cause of action meets the above prerequisites. It is within the trial court's discretion to decide whether this burden has been met. The trial court's decision will be reversed only if there has been an abuse of discretion. *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 37 (E.D. Va.1981); *Newberry v. Washington Post Co.*, 71 F.R.D. 25, 26 (D.D.C.1976).

## II

In denying the motion for class certification,[4] the trial court focused on the requirements of typicality, commonality, and superiority of the method of adjudication. Appellant claims that four questions of fact or law (stated *infra*) included in his individual claim are also common to the class, thus satisfying both the requirements of typicality and of commonality.

The requirement of typicality has often been associated with the requirement that the representative plaintiff adequately represent the class, *i.e.*, that the interest of the representative plaintiff be co-extensive with the interests of other class members and that there be a lack of adverse interests

---

**3.** Super.Ct.Civ.R. 23(a) and (b)(3) provide:

   (a) PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

   (b) CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

   \*   \*   \*   \*   \*   \*

   (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the

findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**4.** Denial of class action status is generally not an appealable order. *Kanelos v. District of Columbia*, D.C.App., 346 A.2d 247 (1975). Because the trial court dismissed the complaint here appellant had a final order properly appealable to this court. D.C.Code 1981, § 11–721(a)(1). However, the proper procedure in this case was not dismissal. The trial court should have certified the case to the Small Claims Branch of the Civil Division of the Superior Court for a decision on the merits.

between the representative and the class. *Sommers v. Abraham Lincoln Federal Savings & Loan Association,* 66 F.R.D. 581, 586–87 (E.D.Pa.1975). To determine if the typicality requirement is met, the court considers the allegations in the complaint, the nucleus of facts underlying the allegations, and the evidence necessary to prove those facts. *Id.* at 587. Normally, factual variations do not preclude class certification where the claims arise out of the same legal or remedial theory. *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1189 (10th Cir. 1975). However, where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff, class certification should be denied for the reason that less attention will be given to controlling issues for the rest of the class, thus prejudicing the probability of success for the class. *Koos v. First National Bank of Peoria,* 496 F.2d 1162, 1164–65 (7th Cir. 1974); *Sicinski v. Reliance Funding Corp.,* 82 F.R.D. 730, 734 (S.D.N.Y.1979); *Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y.1978). In short, representative plaintiffs should not be distracted by a unique personal defense. *Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663, 667 (N.D.Ga. 1975); *Koos v. First National Bank of Peoria, supra* at 1165.

In *Weber v. Turner,* 92 F.R.D. 749 (D.D. C.1981), while the named plaintiff alleged numerous discriminatory practices against the class, the factual allegations showed that her experiences were atypical, and the class was not certified because the litigation would necessarily concentrate on issues unique to the named plaintiff. *Id.* at 751.

In the instant case, American loaned money to appellant as well as to Ms. Austin. Appellant's loan was contingent upon his first obtaining $60,000 from the sale of his condominium to Austin in order to settle on the purchase of another house, a provision allegedly contained in the closing instructions which American gave to District Title, the escrow agent which conducted both settlements. Instead of abiding by this contingency, appellant obtained a bridge loan from another financial institution and settled on the purchase of his new house a few days before settling on the sale of the condominium. Appellee contends that because appellant breached the terms of the contingency, it has a defense against appellant which it does not have against other potential class members; and because appellant will necessarily be distracted by this unique personal defense, he should not be a representative plaintiff in a class action. In addition, it is alleged that appellant's claims cannot be typical of some class members' claims because they dealt with PAF, and he did not.[5] *See Sommers v. Abraham Lincoln Federal Savings & Loan Association, supra* at 588; *Long v. District of Columbia,* 152 U.S.App.D.C. 187, 190, 469 F.2d 927, 930 (1972).

### III

The four issues asserted to be common to the class are: (1) whether appellant is a third party beneficiary of the mortgage contract between the buyer and American; (2) whether American breached its mortgage contract by failing to disburse the mortgage loan amount on the settlement date; (3) whether the defense that American was not obligated to disburse the money until the paperwork was completed is valid; and (4) whether District Title's conduct is attributable to the lender. Assuming *arguendo* that these questions are in fact common to a class, we nevertheless hold that individual issues predominate over common ones.

■ Appellant maintains that the mortgage contract includes the deed of trust and the promissory note. He admits that there are individual variations in the amount and length of loans, interest rates, prepayment rights, government guarantees, assumption

---

**5.** A plaintiff may represent a class against defendants with whom he has not dealt when a conspiracy is alleged. *Sommers v. Abraham*

*Lincoln Federal Savings & Loan Association, supra* at 588.

rights, and other loan terms. He nevertheless contends that the only relevant term of the mortgage contract is that when the buyer signs the promissory note and deed of trust at settlement, interest on the loan begins to run; thereby obligating the lender to fund the loan so that the buyer can pay the seller for the property on the settlement date. However, while appellant may be correct as to the irrelevancy of certain contractual terms, the solution to the four alleged common questions of law or fact necessarily turns on the terms of individual agreements between buyers and lenders. The answers to these questions encompass a determination of which document or documents constitute a mortgage contract (deed of trust, promissory note, loan agreement, and/or sales contract) and a review of individual mortgage contracts to identify the members of the class. Assuming that a core class was to be certified, each contract would have to be examined to insure that it covered residential real property in the District of Columbia, with either PAF or American as the lender. Also, the individual terms of each contract would have to be reviewed to determine whether the buyer was to pay interest from the settlement date, whether the lender was obligated to fund the loan so that the buyer could pay the seller on the settlement date, whether the transaction occurred within three years of the date appellant's complaint was filed, and whether the seller received the full contract price on the settlement date. Because the facts surrounding each potential class member's claim must be considered separately, it is possible that no one adjudication could settle the question of the defendant's liability to all members of the class. Even if appellant were to establish that American breached a duty to pay him the proceeds of the Austin loan on the date of the settlement, a cause of action on behalf of other class members would not be established. Where no one adjudication can settle the question of a defendant's liability to the class members, the case is inappropriate for class action because of the predominance of individual questions over common issues. *Altenbach v. Francis Ford, Inc.,* 17 Fed.R.Serv.2d 321 (D.Ore.1973); *see also Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 795–96 (10th Cir. 1970); *Wilensky v. Olympic Airways, S.A.,* 73 F.R.D. 473, 477 (E.D.Pa.1977); *Sicinski v. Reliance Funding Corp., supra* at 733; *Graybeal v. American Savings & Loan Association,* 59 F.R.D. 7, 15 (D.D.C.1973).[6] By their very nature, breach of contract claims do not lend themselves to class action solution. *Id.* As in *Graybeal,* the instant action was unsuited for class action treatment because answers to the questions of law or fact necessarily turned on individual loan contracts between a particular borrower and a particular lending institution, causing individual questions to predominate over common ones. The necessity for individual inquiries precludes a finding that the four questions asserted to be common to the class predominate over others affecting only individual members of the class. *See Wilensky v. Olympic Airways, S.A., supra* at 477.

For the same reasons, the trial court properly denied further discovery to determine if all mortgage contracts were standardized. The contracts would have to be examined to see if they were standard ones

**6.** Before 1974, the Truth in Lending Act provided that plaintiffs would recover a minimum of $100 per violation. 15 U.S.C.A. § 1640. Due to this provision, class action certification was often denied under Rule 23(b)(3) as not being a superior method of adjudication. A proposed $100 minimum recovery for each class member could have rendered potentially devastating punishment unrelated to any damages to the purported class or to any benefit to the defendant. *Graybeal v. American Savings & Loan Association, supra* at 16; *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 416 (S.D.N.Y.1972). The 1974 amendments to the Act remedied this by providing that there will be no minimum recovery for each member of a class and by limiting the maximum total recovery for successful plaintiffs in class actions. *Postow v. Oriental Building Association,* 390 F.Supp. 1130, 1140 (D.D.C.1975). Concomitantly, some pre-1974 Truth in Lending Act cases may no longer be of precedential value on their reasoning regarding superiority of the method of adjudication. However, those cases (*Graybeal v. American Savings & Loan Association* and *Altenbach v. Francis Ford, Inc.*) are valid precedent on the points for which they are cited.

or to note differences in each which might have affected the questions asserted to be common. To allow such discovery would undermine the rationale of the predominance requirement—that is, "to protect the Court and the public from the confusion and waste of resources occasioned by collective adjudication of separate claims or the separate adjudication of common claims." *Sommers v. Abraham Lincoln Federal Savings & Loan Association, supra* at 590.

## IV

Finally, using the criteria set forth in Super.Ct.Civ.R. 23(b)(3), we agree that a class action is not a superior method of adjudicating this controversy. As explained above, because of the individual nature of contract claims, individual class members might have an interest in controlling the claims and defenses in their actions. This is especially true here because appellee PAF allegedly has an atypical defense to appellant's claims. The proceedings have not progressed toward class action litigation even assuming that only a "core class" is to be certified. As the trial court concluded, management of this litigation could be cumbersome in the class action format. Numerous claimants would have to testify in succession, causing potential confusion for the trier of fact as well as for counsel. Thus the intent of Rule 23(b)(3) to provide the superior method for the fair and efficient adjudication of the controversy would be subverted. *See City of New York v. International Pipe & Ceramics Corp.,* 410 F.2d 295, 298 (2d Cir. 1969).

■ In summary, because appellant's claims are subject to atypical defenses, because common questions of law or fact do not predominate, and because appellant has not shown that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, we conclude that the trial court acted within its discretion in denying appellant's motion for class certification and discovery.

*Affirmed.*