Joseph D. BOWLER, Appellant,

v.

Pamela JOYNER, et al., Appellees.

Pamela JOYNER, et al., Appellants,

v.

Joseph D. BOWLER, Appellee.

Nos. 87–1499, 88–67.

District of Columbia Court of Appeals.

Argued June 15, 1989.

Decided Aug. 24, 1989.

Victoria Albornoz, with whom Del S. Dameron, Washington, D.C., was on the brief, for appellant-cross-appellee.

A. Palmer Ifill, Washington, D.C., for appellee-cross-appellant.

Before ROGERS, Chief Judge, and FERREN and TERRY, Associate Judges.

PER CURIAM:

The trial judge awarded Joseph D. Bowler, appellant-cross-appellee (Appellant), $179 in damages for conversion of his personal property by Pamela Joyner, Betty Mae Joyner, and Larry Joyner (Appellees). Appellant contends that the trial judge's findings were clearly erroneous in failing to reflect the uncontroverted value of the property which appellees converted. Appellees cross-appeal on the ground that the trial judge's findings of conversion of valuable property were unsupported by the evidence. We remand for further proceedings on the issue of damages; otherwise we affirm.

**1.** *See Bowler v. United States*, 480 A.2d 678 (D.C. 1984).

I

This litigation arose as a result of the removal of appellant's personal property from his room within one month after his arrest on February 21, 1982, for the murder of his cousin's fiance.[1] At the time of his arrest, appellant was living in his mother's house at 1133 Park Street, N.E., where he owned television sets, stereo equipment, jewelry, furniture, household items, books, clothing, and other personal effects, which he valued at $20,000.

In 1983, he sued his cousin Pamela Joyner, her mother Betty Mae Joyner, and her brother Larry Joyner for conversion of his property. At trial, appellant listed the items which he owned and kept in his room at 1133 Park Street, the cost of each item, and the value of each item to him at the time of his arrest. He testified that he had not given anyone permission to take his possessions. Appellant's son corroborated his father's testimony regarding many of the items in his room, and testified that on the night of his father's arrest, he saw Pamela Joyner take a television set, and that later in the week he saw Betty Mae Joyner take some books, Larry Joyner take jeans and a drill, and the two of them throw out appellant's bed and other items.

Appellee Betty Mae Joyner admitted that on the night of appellant's arrest she saw Pamela and appellant's common-law wife Elsie Lender take a television set and some other items from 1133 Park Street. She denied that she, Pamela or Larry took anything else the next day, claiming instead that Elsie removed her own clothes and personal effects and took bags of appellant's clothes to her friends, and that Lawrence Shinn, appellant's stepfather, took two truckloads of things, including beds, a freezer, clothes, and new jeans. Betty Joyner also claimed that when the police searched appellant's room trying to locate the gun used in the shooting, they scattered his possessions about the room and destroyed his property, including the bed, dresser, and clothes. In addition, she testified that there was a break-in and afterwards she noticed the stereo equipment

was missing. Finally, while admitting that she took and threw away some books, beds, dressers, clothes, and 100 phonograph records from appellant's room, she asserted that as appellant's landlord she had a right to dispose of his abandoned property.

Appellee Pamela Joyner testified that she helped Elsie Lender move a television set and bags of her jewelry and clothes to a neighbor's house. Pamela said that four or five of Elsie's friends broke into appellant's room the night of his arrest and took his calculators, rings and jewelry. She also testified that appellant's son took calculators, money and jewelry.

Appellee Larry Joyner admitted that when he cleaned the house, he threw out appellant's clothes, cosmetics, bed, dresser, rug, and records, but testified that appellant's dresser was scarred and had water marks, that the rug was stained and worn, and that the 100 phonograph records were all broken.

The trial judge awarded judgment against Pamela Joyner in the amount of $100 for a television set, against Betty Mae Joyner in the amount of $14 for two Time-Life home improvement books, and against Betty Mae Joyner and Larry Joyner jointly and severally in the amount of $15 for the bed and $50 for the 100 phonograph records which they threw out. Although the judge found that Betty Mae Joyner and Larry Joyner also converted appellant's dresser, rug, and "unspecified items of clothing," he ruled that these items were of "undetermined value" and did not award appellant any compensation for them.

## II

■ Appellant claims that the trial judge's findings were clearly erroneous because they ignored "uncontroverted evidence" regarding the items converted by appellees and "undisputed testimony" re-

garding the value of the converted items. We disagree.[2] The only uncontroverted evidence on the issue of conversion was that Betty Mae Joyner and Larry Joyner took and threw away some of appellant's books, a bed, a dresser, a rug, clothes, and some records, and the judge found they had converted these items. Appellant's contention that appellees' evidence was "wholly unpersuasive" misconstrues the standard of our review for clear error. This is not a case, as appellant contends, in which the trial judge credited testimony that was "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1984). Rather, conflicting testimony was presented at trial, whose resolution hinged on assessments of credibility by the trial judge to whom this court will defer.[3] *See Edmund J. Flynn Co. v. La-Vay, supra,* 431 A.2d at 546 (citations omitted); *Robinson v. Jones,* 429 A.2d 1372, 1374 (D.C.1981); *Lee Washington, Inc. v. Washington Motor Truck Transp. Employees Health and Welfare Trust,* 310 A.2d 604, 606 (D.C.1973).

■ Appellees' contentions likewise fail. Appellees maintain that because Betty Mae Joyner was appellant's landlord, she did not convert his property when she discarded it in the process of cleaning the house. In support of this argument, they note that appellant failed to make a demand for the return of his property. Of course, as appellant points out, a demand is necessary only when there are no "other facts and circumstances independently establishing a conversion." *Shea v. Fridley,* 123 A.2d 358, 361 (D.C.1956). Appellant testified that he neither abandoned his property nor authorized appellee Betty Mae Joyner to dispose of his possessions, and that he did not authorize his stepfather

2. This court will set aside a trial judge's finding of fact only if it is "plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (1981); *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 546 (D.C.1981).

3. At oral argument appellant claimed that the trial judge also erred since there was evidence

that appellant's bicycle had been taken. However, there also was conflicting testimony, since Betty Mae Joyner said Pamela returned the bicycle to appellant's son, and appellant's son said Pamela's son had taken it thereafter. We defer to the trial judge's resolution of the conflict.

Lawrence Shinn to remove his property from 1133 Park Street.[4] Even if Betty Mae Joyner's possession of appellant's property as his landlord had been rightful initially, the expiration of a lease of the premises would have created an implied demand for return of the property.[5] *Id.* (citations omitted). Furthermore, in view of the uncontroverted evidence that Pamela Joyner removed the television set on the night of appellant's arrest, and Betty Mae Joyner and Larry Joyner threw out appellant's belongings one or two months after his arrest, before his criminal trial on November 5, 1982, the trial judge could reasonably have concluded that a demand was neither possible nor necessary.

That Betty Mae Joyner and Larry Joyner discarded appellant's property rather than taking it for their own use is irrelevant; by throwing away his possessions, they exercised dominion and control over them. Nor can appellees prevail on the ground that appellant sued the wrong party; even if Betty Mae Joyner was acting in her capacity as personal representative of the estate of appellant's mother,[6] there was no evidence that the probate court had ordered her to dispose of appellant's property, and the record supports the inference that she was acting in a personal capacity when she cleaned out appellant's room in preparation for renting it.

Accordingly, we hold that the trial judge's findings of fact and conclusions of law regarding which items were converted by appellees are supported by the record and not clearly erroneous.

## III

Appellant also contends that the award of damages was insufficient in light of the evidence and the trial judge's findings of fact. Appellees counter that there was no evidence to support the trial judge's award of $179, characterizing appellant's testimony on the value of his possessions as "irrelevant" because he could only attest to their value at the time of his arrest, and not at the time of conversion when the intervening police search had caused extensive damage. We disagree with this characterization.

"The traditional standard for calculating damages for conversion is the fair market value of the property at the time of the conversion." *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C.1989) (citing *Mearns v. Chatard*, 47 App.D.C. 257, 265–66 (1918)). Since valuation of the converted property did not require special expertise, *see, e.g., Mahallati v. Williams*, 479 A.2d 300, 306 (D.C.1984) (fur coat), appellant's personal estimate of the value of his own property is sufficient to establish value. *Hartford Accident & Indem. Co. v. Dikomey Mfg. Jewelers, Inc.*, 409 A.2d 1076, 1079 (D.C.1979). "This rule has special application in cases of lost or destroyed household goods and wearing apparel where ordinarily the standard of market value is recognized as not furnishing adequate compensation and resort is had to the standard of actual value to the owner." *Shea v. Fridley, supra*, 123 A.2d at 362 (quoting *Manning v. Lamb*, 89 A.2d 882, 884 (D.C.1952)).

The judge, sitting as trier of fact, was free to weigh the testimony of appellant and other witnesses, considering any circumstances and conditions which may have altered the value of the converted property. *See Mahallati v. Williams, supra*, 479 A.2d at 305–06; *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982); *Designers of Georgetown, Inc. v. E.C. Keys & Sons*, 436 A.2d 1280, 1281

4. *See Bowler, supra* note 1, 480 A.2d at 681. Shinn testified that appellant authorized him only to remove three items from a closet: one suitcase, coat, and pair of trousers. Consequently, there is no merit to appellee's contention that Shinn was appellant's agent and the property he did not remove was abandoned.

5. While there was no evidence of a formal lease between appellant and Betty Mae Joyner, appellant testified that he had been paying her a monthly rent.

6. Appellant's mother, Mamie Lee Bowler, had died a month before appellant's arrest, bequeathing her house at 1133 Park Street to her sister Betty Mae Joyner and grandson Joseph Bowler, Jr.

(D.C.1981). Taking into account the fact that appellant valued his possessions at their original purchase prices despite subsequent periods of use, it was not clearly erroneous for the trial judge to find that at the time of conversion the television set, which appellant testified was worth $187, was worth $100, the bed, which he bought one and a half years ago, was no longer worth $50 but only $15, the thirty-six Time–Life books he owned of which Betty Mae Joyner took two were each worth $7 rather than the $10.95 appellant paid for them, and finally, the records appellant had bought at $1 and $5.95 each, of which appellees converted 100, were worth $50.

 The only clear error we find is the trial judge's failure to determine the value of the rug, dresser, and clothes which he found appellees Betty Mae Joyner and Larry Joyner had converted. The judge stated that these items were of "undetermined" value, because

> [t]he evidence is insufficient to sustain [appellant's] burden of proof, as regards the actual value to [appellant] of some of the items proved to have been converted by one or more of the defendants.... The Court has not undertaken to speculate ... as to the value of any item for which evidence of value is lacking.

"An injured party will not be precluded from recovering damages because he cannot prove his exact damages" so long as there is a reasonable basis for approximation. *R.S. Willard Co. v. Columbia Van Lines Moving & Storage Co.*, 253 A.2d 454, 456 (D.C.1969). *See also Hartford Accident & Indem. Co., supra,* 409 A.2d at 1082; *Savoy Constr. Co. v. Atchison & Keller, Inc.,* 388 A.2d 1221, 1224 (D.C. 1978). Appellant testified at length regarding his estimated value of his rug ($50) and clothing (in excess of $3000).[7] Whether or not the trial judge credited appellant's testimony regarding the value of his property was a matter for the judge to decide as trier of fact; however, the judge never found that the dresser, rug, and clothing were of no value. He did not find, for example, that the police had completely

destroyed appellant's furniture so that, at the time of conversion, it had no value to appellant. Absent such a finding, it was clearly erroneous not to award appellant damages for the value of the converted property.

Accordingly, the judgment is affirmed as to liability, reversed as to damages and the case is remanded for further findings on damages.

---

7. He testified that the dresser was a gift and, therefore, he was unable to estimate its value.