# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KIDANE KIFLE, *et al.*                    :
                                          :
    Plaintiffs,       :    Civil Action No.:   22-2056 (RC)
                                          :
    v.                :    Re Document Nos.:  14, 18
                                          :
ZP TOWING,                                :
                                          :
    Defendant.        :

## <u>MEMORANDUM OPINION</u>

### GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

## I.  INTRODUCTION

Kidane Kifle and KNT Signs & Graphics LLC brought suit alleging that ZP Towing towed Kifle's vehicle and never returned it despite repeated inquiries, thereby breaching a contract with Plaintiffs and unlawfully converting Plaintiffs' chattel.  *See generally* Compl., ECF No. 1.  On March 21, 2024, this Court granted in part and denied in part Plaintiffs' motion for default judgment in accordance with Federal Rule of Civil Procedure 55(b)(2) and instructed Plaintiffs to provide more information to accurately calculate the claim for damages.  *See* Mem. Op., ECF No. 17; *Kifle v. ZP Towing*, No. 22-cv-2056, 2024 WL 1213208, at *1 (D.D.C Mar. 21, 2024).  For the reasons stated below, the Court now grants the motion for a default judgment and awards Plaintiffs $14,686.86 in damages.

## II.  FACTUAL BACKGROUND

This Court presumes familiarity with the background laid out in its prior opinion.  *See* Mem. Op. at 2–5.  In that opinion, this Court found that Defendant converted Plaintiffs' vehicle, that loss-of-use damages could be accurately assessed for the 14-day period that Kifle rented a car while Defendant refused to provide information for retrieving the RAV4, and that no

additional damages could be awarded for breach of contract. *Id.* at 6–14. The Court further found that it had insufficient evidence to calculate the value of the car at the time of conversion, additional loss of use damages, damages for the cost to buy a replacement car, and punitive damages. *Id.* at 8–9. Plaintiffs have since filed supplemental information with the Court, including estimates of the vehicle's value at the time Defendant towed it. *See* Pls.' Resp. to Court Order, ECF No. 18. The additional filing further clarifies that KNT Signs & Graphics LLC was Kifle's company, and that he used the vehicle to support his business. *Id.* at 2.

### III. ANALYSIS

The Court determines that Plantiffs' submission of additional information to substantiate claims for damages provides satisfactory evidence to assess the value of the RAV4 for awarding damages for conversion. The Court further finds that it lacks sufficient evidence to calculate additional loss-of-use damages for conversion and that damages for the cost to buy a replacement car and punitive damages remain unwarranted.

### A. Value of the RAV4

In its previous memorandum opinion, the Court explained that it had "insufficient evidence on which to base the value of the vehicle." Mem. Op. at 8. In their supplemental filing, Plaintiffs submitted evidence indicating that according to Kelly Blue Book, the vehicle could be valued at a range between $8,765.00 to $20,032.00. *See* Ex. 1 to Pls.' Resp. to Court Order, ECF No. 18. In addition to the Kelly Blue Book, Plaintiffs include an online report using the car's VIN, created in April 2024, showing an average market value of $14,000.00, for a vehicle with no accidents. *See* Ex. 2 to Pls.' Resp. to Court Order, ECF No. 18.

In calculating damages for conversion, this Court recognizes that "[t]he traditional standard . . . is the fair market value of the property at the time of the conversion," *Maalouf v.*

*Butt*, 817 A.2d 189, 190 (D.C. 2003) (citing *Bowler v. Joyner*, 562 A.2d 1210, 1213 (D.C. 1989)), and fair market value is the price that "would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy." *Withers v. Wilson*, 989 A.2d 1117, 1120 (citing *Royer v. Deihl*, 55 A.2d 722, 724 (D.C. 1947)). Therefore, a vehicle's fair market value must consider any factors contributing to depreciation in value from the time the vehicle was purchased. *See Sawyer v. Monarch Cab Co.*, 164 A.2d 340, 341–42 (D.C. 1960) (determining that a damage calculation was incorrect because it failed to consider and properly deduce the value of depreciation). Furthermore, depreciation is especially relevant to a car because of the nature of its everyday use. *See Zellers v. United States*, 682 A.2d 1118, 1121 (D.C. 1996) (acknowledging that chattel subject to everyday wear and tear depreciate promptly). The car accident central to the origin of this suit is thus a pertinent factor in determining any depreciation of the vehicle's value, and the Court recognizes that the $14,000.00 estimated value of the vehicle submitted by Plaintiffs does not factor in the damage to the vehicle. *See* Compl. ¶ 6; Ex. 2 to Pls.' Resp. to Court Order.

However, the present status of the car—a converted vehicle that Plaintiffs cannot access—makes it impossible to accurately assess its value following the collision. "Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *United Med. Supply Co., Inc. v. United States,* 77 Fed. Cl. 257, 263 (2007) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)). The rule "provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 289 (D.D.C. 2008) (quoting *Johnson v. WMATA*, 764 F. Supp. 1568, 1579 (D.D.C. 1991)). A party is entitled

to an adverse inference when it can show "(1) the evidence existed, (2) the evidence was destroyed by the non-movant, (3) the non-movant had a duty to preserve which was triggered prior to the destruction of the evidence, and (4) the evidence cannot be restored or replaced through additional discovery." *Harrington v. Pompeo*, No. 18-cv-1056, 2023 WL 2669890, at *1 (D.D.C. Mar. 1, 2023). The duty to preserve arises "when a party *should have known* that the evidence may be relevant to future litigation." *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 170 (D.C. Cir. 2013).

These requirements are met here. Defendant was in possession of the RAV4 immediately after the accident, never returned it, and to date has not submitted information on the car's whereabouts or any assessment of the collision's impact on the car. *See* Compl. ¶¶ 6–11; Mem. Op. at 7. Defendant should have known that its failure to return the vehicle could result in litigation. Indeed, Plaintiffs assert that one of Defendant's employees told them to "sue him," indicating that Defendant was on notice of potential litigation. Ex. 7 to Compl., ECF No. 1-1. This evidence cannot be replaced through discovery because Defendant has not appeared. Defendant's conversion of the RAV4 amounts to spoliation of evidence in these circumstances, and the Court applies an inference in Plaintiffs' favor regarding the value of the vehicle. The Court thus concludes that $14,000 adequately approximates the value of the vehicle at the time of the collision. The Court bases this estimate on Plaintiffs' Exhibit 2 showing the approximate market value of the car. *See* Ex. 2 to Pls.' Resp. to Court Order. The amount also lies in the middle of the range found in Plaintiffs' Exhibit 1. *See* Ex. 1 to Pls.' Resp. to Court Order. The Court thus awards Plaintiffs $14,000 in damages for Defendant's conversion of his RAV4.

## B. Loss of Use

In its previous memorandum opinion, the Court concluded that Plaintiffs had submitted sufficient proof of only $686.86 in loss-of-use damages. Mem. Op. at 11. In their supplemental filing, Plaintiffs explain that 2 years passed between use of the rental car and the purchase of a replacement car because Kifle did not know what happened to the RAV4, and he could not afford a car until he had the help of a co-signer. Ex. 3 to Pls.' Resp. to Court Order, ECF No. 18. The Court recognizes that Plaintiffs can be compensated for damages resulting from converted chattel, limited only to a reasonable amount of time required to either repair or replace the car. *See Gamble v. Smith*, 386 A.2d 692, 694–95, 698 (D.C. 1978). Furthermore, as it relates to conversion of chattel, Plaintiffs are entitled to "the amount of any further loss suffered as the result of the deprivation." Restatement (First) of Torts § 927 (Am. L. Inst. 1939). Plaintiffs submit that Kifle relied on friends, family, and public transportation because he was deprived of his vehicle but does not submit receipts or other evidence showing the total cost. Ex. 3 to Pls.' Resp. to Court Order. It is thus unclear from the submitted evidence what amount of money, if any, the Plaintiffs were deprived. Therefore, this Court cannot award any additional loss of use damages beyond the $686.86 previously calculated for cost incurred by the rental through August 15, 2020. *See* Mem. Op. at 11.

## C. Damages for Cost to Buy Replacement Car

In its previous memorandum opinion, the Court stated that it "does not see how Plaintiffs could receive conversion damages stemming from Kifle's purchase of a more expensive car." Mem. Op. at 12. In their supplemental filing, Plaintiffs explain that the co-buyer of the converted RAV4 on the initial complaint, KNT Signs & Graphics LLC, was Kifle's company which had use of the vehicle but is no longer in operation. Pls.' Resp. to Court Order at 2.

Plaintiffs also stated that Kifle benefited from finding a co-signer for the replacement vehicle. *Id.* While this clarified the financial relationships at play regarding how the replacement car was purchased, Plaintiffs do not provide any additional support for damages based on purchasing a replacement car. As the Court emphasized, "in cases for conversion '[t]he usual and traditional measure of damages for conversion of property is the fair market value of the property at the time of the conversion.'" Mem. Op. at 11 (quoting *Trustees of Univ. of D.C. v. Vossoughi*, 963 A.2d 1162, 1175 (D.C. 2009)). This does not include the replacement cost of the converted property.

### D. Punitive Damages

In its previous memorandum opinion, the Court stated that it did not find the "high bar" for punitive damages satisfied by the Plaintiffs' prior filing. Mem. Op. at 14. In their supplemental filing, Plaintiffs express that Defendant fraudulently agreed to return the car but willfully and wantonly refused to do so in disregard of Plaintiffs' rights. Pls.' Resp. to Court Order at 3. The Court acknowledges that Defendant unlawfully converted Plaintiffs' car and engaged in hostile behavior and general indifference towards Plaintiffs. However, awarding punitive damages for intentional torts requires a showing that the tortious act was committed with an "evil motive, actual malice, deliberate violence or oppression." *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 108 (D.D.C. 2004) (quoting *Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C. 1988). This requires "clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent," *819D v. Potomac Constr. Grp., LLC*, No. 19-cv-80, 2020 WL 5518215, at *3 (D.D.C. 2020) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 657 (D.C. Cir. 2001)), and showings of fraud, without more, do not warrant an award of punitive damages, *see id.* (citing *BWX Elecs. v. Control Data Corp.*, 929 F.2d 707, 712 (D.C.

Cir. 1991)).  Plaintiffs argue that Defendant engaged in fraud and willfully refused to return the vehicle but do not offer evidence meeting the standard for punitive damages.  The Court therefore declines to award punitive damages.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for default judgment and awards Plaintiffs $14,686.86 in damages for the conversion of Plaintiffs' vehicle, comprising $14,000.00 for the fair market value of the vehicle and $686.86 for loss of use.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated: October 3, 2024                                   RUDOLPH CONTRERAS
                                                         United States District Judge